*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* WILFORD/ELLIS, Minors.

UNPUBLISHED
March 21, 2024

No. 367999
Saginaw Circuit Court
Family Division
LC No. 22-050171-NA

Before: M. J. KELLY, P.J., and BOONSTRA and CAMERON, JJ.

PER CURIAM.

Respondent[1] appeals by right the trial court's order terminating her parental rights to her minor children, CLW and EJE under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist), (g) (failure to provide proper care and custody), and (j) (reasonable likelihood of harm if returned to parent). We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

In January 2022, the Department of Health and Human Services (DHHS) filed a petition requesting that the trial court take jurisdiction over CLW and EJE and remove them from respondent's care. DHHS alleged that respondent was homeless, abusing drugs, and inadequately caring for her children. DHHS also alleged that EJE had significant medical needs as a result of respondent's substance abuse during pregnancy and premature birth, and that, due to the minimal amount of time that respondent had spent with EJE in the hospital, respondent had not demonstrated that she could appropriately care for EJE's medical needs. The trial court authorized the petition, the children were removed and placed with respondent's mother (the children's maternal grandmother), and the court granted respondent supervised parenting time.

The trial court conducted an adjudication hearing in February 2022, and respondent pleaded to several allegations in the petition and to the court's exercise of jurisdiction under MCL 712A.2(b)(1) (reason to believe child at substantial risk of harm) and (b)(2) (unfitness of

---

[1] Respondent is the mother of the minor children at issue. Neither child's biological, putative, or legal father was identified in the proceedings below.

parental home). Respondent admitted that she lacked appropriate housing for the children, lacked the skills necessary to adequately care for EJE's medical needs, and had a substance abuse problem, including with alcohol and marijuana, that negatively impacted her ability to care for the children. The trial court ordered that respondent continue to have supervised parenting time and that petitioner make reasonable efforts toward reunification of respondent and the children. The trial court ordered respondent to comply with her case service plan and participate in and benefit from substance abuse treatment, parenting classes, and mental health services. The trial court also ordered respondent to complete substance-abuse and psychological evaluations, submit to random drug screenings, obtain and maintain suitable housing and a legal source of income, participate in parenting time, and complete whatever training was recommended by EJE's physicians so that she could learn how to properly care for EJE.

From February 2022 until April 2023, respondent made minimal progress on her case service plan. Respondent did obtain housing. Respondent reported to her caseworker that she had obtained a job in July 2022, though respondent's caseworker struggled to verify respondent's source of income because respondent consistently failed to provide proof of her employment. At a dispositional review hearing in November 2022, respondent's caseworker reported that respondent was unemployed and had stated that she did not want to get a job at this time over concerns that she would have to "pay additional child support for her children being in foster care." Respondent never provided proof of a legal source of income during the proceedings below, although she did claim to have obtained employment at a restaurant shortly before the termination hearing began. Respondent completed a substance abuse evaluation, but she did not attend any outpatient services. Respondent completed 61% of her drug screenings and consistently tested positive for alcohol and tetrahydrocannabinol (THC)[2] when she did complete them. Respondent completed a psychiatric evaluation, but she minimally participated in the weekly case management, individual counseling, and drug management appointments that were required of her. Respondent completed a parenting education program multiple times, but, according to her caseworker, had demonstrated no benefit from it. Respondent attended only five of EJE's numerous medical appointments, and, during the appointments that she attended, respondent was on her cell phone, acted hostile toward the medical staff, and left early.

Respondent attended roughly half of her supervised parenting times, and, while she was able to split her attention between the two children, DHHS employees reported that she often acted erratically and aggressively toward DHHS employees, the children, and the children's maternal

---

[2] THC is the primary psychoactive substance in marijuana. Marijuana is now legal for recreational use in Michigan under the Michigan Regulation and Taxation of Marihuana Act (MRTMA), MCL 333.27951 *et seq*. Despite this, however, if a parent's use of marijuana creates an unreasonable danger to a minor "that can be clearly articulated and substantiated," the person can be "denied custody of or visitation with a minor." MCL 333.27955(3). Trial courts are generally required to evaluate a parent's marijuana use in the same manner as alcohol or any other legal intoxicant. The relevant inquiry is whether use of the substance will have a negative effect on a parent's ability to parent, or will cause a risk of harm to the child. *In re Richardson*, 329 Mich App 232, 252; 961 NW2d 499 (2019). As previously stated, respondent admitted in this case that her alcohol and marijuana use negatively impacted her ability to parent her children.

grandmother. Respondent's parenting time was repeatedly restricted due to her inappropriate behavior until it was suspended entirely in March 2023 because it was too detrimental to the children's health and well-being. Criminal charges were filed against respondent after a January 2023 parenting time visit at which respondent became intoxicated, assaulted CLW and the children's grandmother, and threatened to burn the house down with the children in it. CLW was diagnosed with anxiety and post-traumatic stress disorder (PTSD) due to living with respondent and her behavior during the January 2023 parenting time, and CLW's therapist recommended that CLW no longer have contact with respondent. CLW also reported that he was scared of respondent, no longer wished to see respondent, and wanted to live with his grandmother "forever." CLW's behavior and mental health improved dramatically after respondent's parenting time was suspended.

In April 2023, DHHS filed a supplemental petition requesting termination of respondent's parental rights under MCL 712A.19b(3)(c)(i), (g), and (j). At the termination hearing, which began in June 2023 and was concluded in August 2023, respondent's caseworker testified that DHHS had provided numerous services to respondent, but respondent failed to participate in the services. Respondent was dismissed from substance abuse outpatient services for failing to participate, and she did not attempt to engage in any other outpatient services until approximately one week prior to the final termination hearing in August 2023. Respondent had reported that she was attending recovery meetings similar to Alcoholics Anonymous (AA) and had provided attendance sheets to her caseworker, but the attendance sheets showed that respondent had attended less than half of the monthly meetings between October 2022 and January 2023. Respondent's caseworker was unable to verify whether respondent attended any meetings after January 2023. Respondent missed more than half of her required drug screenings, and she frequently tested positive for alcohol and THC when she completed her drug screenings. Respondent refused to complete any drug screenings after January 2023. Respondent also testified, despite her earlier admission, that she did not believe that her continued alcohol and marijuana use was "a problem," and she even admitted that she would test positive for THC at the termination hearing if she were asked to complete a drug screening on that day.

Regarding respondent's mental and behavioral health issues, respondent's caseworker testified that respondent was dismissed from counseling services for failing to complete a psychological evaluation or attend scheduled appointments. Respondent completed a psychiatric evaluation at Hope Network in February 2022, but she did not provide the evaluation to her caseworker until November 2022. The caseworker was able to obtain Hope Network appointment logs from February 2022 to March 2023 only after they were subpoenaed. The logs indicated that respondent missed the majority of her weekly case management, individual therapy, and medication review appointments each month. Respondent refused to sign an updated release form so that her caseworker could verify her participation and progress after March 2023. The caseworker did not believe that respondent had benefited from the offered mental health services given her inconsistent attendance and erratic behavior throughout the case.

The caseworker testified that respondent was dismissed from a supportive visitation and parenting education program for repeated absenteeism, and, despite completing a different parenting education program on her own, respondent had demonstrated no improvement in her parenting skills. Respondent had attended only five of EJE's medical appointments and, as a result, was unable to adequately learn about EJE's medical impairments or how to adequately care for

them. As stated, respondent attended only approximately half of her scheduled parenting time visits, and she often exhibited inappropriate, erratic, aggressive, and even violent behavior when she attended. Additionally, respondent brought unapproved adults to parenting time visits, used alcohol and marijuana during the visits, often left EJE unsupervised, and once took CLW from a supervised visitation without authorization and left in an unknown person's car. Respondent's behavior at parenting time never improved, and parenting time was continually restricted until it was suspended entirely as a result of her assaults of and threats toward the children and their grandmother. By the time that respondent's parenting time was suspended, respondent had already stopped attending them, possibly to avoid being arrested for the assault against the children's grandmother.

Respondent's caseworker and the children's grandmother both testified that termination was in the children's best interests because it was harmful to both children to return to respondent's care, respondent had largely failed to participate in or benefit from her services, and respondent had not demonstrated that she could provide the children with adequate care or a stable home environment. The caseworker testified that it was unclear whether EJE had a bond with respondent specifically, given that EJE was very affectionate toward everyone. The caseworker testified that CLW had a very unstable bond with respondent. Respondent's caseworker testified that CLW repeatedly expressed significant concern about returning to respondent's care, and he reported that he no longer wanted to see respondent and that he wanted to live with his grandmother "forever." The children's grandmother testified that CLW was "scared" of respondent, "would come home angry all the time" after parenting times, and would pray nearly every night that he could remain at her house. Both children were bonded with their grandmother and thriving in her home, and she provided adequate care and a stable home. The children's grandmother explicitly stated that she wanted to adopt the children as opposed to having a guardianship because there was significant discord between her and respondent and she feared for the children's safety as well as her own.

After the hearing, the referee recommended termination of respondent's parental rights. The referee found that clear and convincing evidence existed to warrant termination under MCL 712A.19b(3)(c)(i), (g), and (j). The referee acknowledged that respondent had obtained housing and a job, but noted respondent's continued substance abuse and lack of parenting skills, as well as her failure to comply with various aspects of her case service plan, including failing to complete substance abuse and mental health services and failing to demonstrate any benefit from the parenting education program. For many of the same reasons, the referee also concluded that termination was in the children's best interests. The referee expressly noted the different needs and interests of the children, and concluded that returning EJE to respondent would be dangerous to her physical health, while returning CLW to respondent would be extremely detrimental to his mental health. The referee also expressly acknowledged the children's relative placement, which he found weighed in favor of termination because the children's grandmother had no interest in maintaining a guardianship and only wished to adopt the children to provide them with stability and permanency. The trial court adopted the referee's recommendations and entered an order terminating respondent's parental rights in September 2023. This appeal followed.

## II. STANDARD OF REVIEW

We review for clear error a trial court's finding that a statutory ground for termination of parental rights has been proven by clear and convincing evidence and that termination is in a

child's best interests. *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). A finding is clearly erroneous if, even if some evidence supports the finding, the reviewing court is nevertheless left with the firm and definite conviction that the lower court made a mistake. *Id*. at 41. "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). This Court gives deference to "the special ability of the trial court to judge the credibility of witnesses." *In re Medina*, 317 Mich App 219, 227; 894 NW2d 653 (2016) (quotation marks and citation omitted).

## III. STATUTORY GROUNDS FOR TERMINATION

Respondent argues that the trial court clearly erred by finding clear and convincing evidence supporting the statutory grounds cited in support of termination. We disagree.

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5).

A court may terminate parental rights under MCL 712A.19b(3)(c)(*i*) if it finds clear and convincing evidence of the following:

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds . . . the following:

> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

Termination is appropriate pursuant to MCL 712A.19b(3)(c)(*i*) when "the totality of the evidence amply supports that [the respondent] had not accomplished any meaningful change in the conditions" that led to the adjudication, *In re Williams*, 286 Mich App 253, 272; 779 NW2d 286 (2009), and would not be able to rectify those conditions within a reasonable time, MCL 712A.19b(3)(c)(*i*). In this case, the record supported the trial court's findings that more than 182 days had elapsed since the issuance of the initial dispositional order, the conditions that led to the adjudication continued to exist, and there was no reasonable likelihood that the conditions would be rectified within a reasonable time considering the children's ages.

The conditions that led to adjudication in this case were primarily respondent's substance abuse and lack of parenting skills, although mental health, housing instability, and employment were also concerns. The children were removed from respondent's care after she was expelled from a homeless shelter for abusing alcohol and marijuana, repeatedly left CLW with relatives who had no legal authority to care for him, and visited EJE at the hospital so infrequently that medical staff determined that she had not learned how to adequately care for EJE's extensive medical needs. Respondent was offered numerous services to enable her to reunite with the children for more than 16 months, but she failed to participate in and benefit from most of the services. Respondent obtained housing, but the caseworker was never able to determine if the

home or the unknown individuals living in it were appropriate for the children because respondent never allowed the caseworker to view the home. Respondent also reported that she had obtained a job shortly before the termination hearing, but she never provided her caseworker paystubs or other documents as proof of income. Respondent completed only slightly more than half of her drug screenings, consistently tested positive for alcohol and THC, and stopped completing drug screenings entirely after January 2023. Respondent admitted at the termination hearing that she still used alcohol and marijuana and did not see her continued substance use as a problem, and she admitted that she would have tested positive for THC if tested that day. Respondent refused to participate in substance abuse outpatient services, and minimally participated in recovery meetings. Respondent also refused to participate in mental health services, and only minimally participated in the weekly counseling that she reported to her caseworker. Respondent's caseworker did not believe that she had benefited from the services given her poor attendance and erratic behavior throughout the case.

Respondent also completed a parenting education program multiple times, but respondent's caseworker testified that she demonstrated no benefit from the program. Respondent participated in only half of her parenting times and continued to act inappropriately at the visitations. Respondent's parenting time was continually restricted due to her inappropriate, erratic, and aggressive behavior until it was suspended entirely after she became intoxicated, assaulted CLW and her mother (the children's grandmother), and threatened to burn the house down with the children inside. Criminal charges were filed against respondent as a result, and her mother obtained a personal protection order against her, both of which were still pending at the time of the termination hearing. Respondent's caseworker testified that respondent could adequately divide her attention between the two children at parenting time, but had no apparent parent-child bond with either child.

Respondent testified that she had benefited from the parenting education program and had a great relationship with CLW, but the caseworker and the children's grandmother both testified that CLW was scared of respondent and required constant assurance that he would not be returned to respondent's care, and CLW's mental health and behavior drastically improved after respondent's parenting time was suspended. EJE had several medical appointments each week throughout the case, but respondent admitted that she had attended only five of them, and the children's grandmother stated that respondent was unengaged and hostile at the appointments that she did attend. As a result, respondent had no true understanding of EJE's medical conditions or how to adequately care for them on a day-to-day basis. Given respondent's lack of participation and failure to demonstrate any benefit from the few services that she completed during the 16-month pendency of this case, respondent's caseworker did not believe that respondent would participate in services and rectify her barriers if given additional time. The trial court therefore did not clearly err by concluding that there was no reasonable likelihood that respondent would

rectify the conditions that led to adjudication within a reasonable time. See MCL 712A.19b(3)(c)(*i*).[3]

## IV. BEST-INTEREST DETERMINATION

Respondent also argues that the trial court clearly erred by finding that termination of respondent's parental rights was in the children's best interests. We disagree.

When determining whether termination is in a child's best interests, the court should place its "focus on the child rather than the parent." *In re Schadler*, 315 Mich App 406, 411; 890 NW2d 676 (2016). "The trial court should weigh all the evidence available to determine the children's best interests," and it should consider a variety of factors, including "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re White*, 303 Mich App 701, 713-714; 846 NW2d 61 (2014). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *Id*. The trial court must "explicitly address each child's placement with relatives at the time of the termination hearing." *Olive/Metts*, 297 Mich App at 44. The trial court must also determine each child's interests individually, and if the best interests of the individual children significantly differ, the trial court should address those differences when making its determination of the children's best interests. *White*, 303 Mich App at 715-716. The trial court must state on the record or in writing its findings of fact and conclusions of law regarding its best-interests determination. See MCL 712A.19b(1); MCR 3.977(I)(1).

Respondent argues that the trial court gave inadequate weight to the fact that she had obtained a house and a job, and had completed a parenting education program as directed by her case service plan. However, the caseworker was unable to determine whether the house was appropriate for the children and was unable to verify respondent's employment because she never provided proof of income. Additionally, the record shows that respondent had not demonstrated any benefit from the parenting education program that she completed, and that she refused to consistently participate in mental health and substance abuse services. Respondent also tested positive for alcohol and THC throughout the case and admitted that she continued to use the substances because she did not believe it was a problem, despite the role of these substances in her children's removal and their effects on her behavior that were apparent during parenting time visits. The caseworker and the children's grandmother testified that respondent continued to act inappropriately and even violently at the parenting times that she attended, and she never obtained the knowledge or skills necessary to adequately care for EJE's extensive medical issues because she attended only five of EJE's medical appointments and was unengaged at the few appointments that she did attend. Respondent's parenting time was suspended after she physically assaulted and

---

[3] Because only one statutory ground need be established by clear and convincing evidence to terminate a respondent's parental rights, we need not address respondent's arguments regarding MCL 712A.19b(3)(g) and (j). See *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011).

threatened her mother and CLW. Overall, the trial court did not clearly err by determining that respondent had showed no improvement in her ability to adequately parent the children.

Respondent also argues that she had a strong bond with the children, particularly CLW, and that the trial court failed to consider the needs of each child individually, but the record suggests the opposite. The referee expressly noted the different needs and interests of the children, including EJE's significant medical needs. The referee found—and the record supports—that EJE could be seriously physically harmed if returned to respondent's care because respondent had not learned the skills necessary to adequately care for her medical needs. The referee also found that, while CLW "may not suffer the same kind of physical harm as his sister," there was a high likelihood that he "would suffer mental harm" if returned to respondent. Respondent testified that she had "a great relationship" with CLW, but the children's grandmother and the caseworker testified that CLW was afraid of respondent and required constant reassurance that he would not have to return to respondent's care. CLW was diagnosed with generalized anxiety and PTSD and required therapy to process the trauma that he had experienced while living with respondent, particularly after she assaulted him during a parenting time visit. CLW's mental health and behavior dramatically improved after the suspension of respondent's parenting time. Therefore, respondent is simply not correct that the trial court failed to consider her bond with the children or evaluate the children's best interests individually; nor do we find that the trial court clearly erred in finding that the children would suffer individualized harm if returned to respondent and were not strongly bonded to her. *White*, 303 Mich App at 715-716.

Additionally, the caseworker testified that it was crucial for EJE's physical health and CLW's mental health to no longer have contact with respondent and to remain in their grandmother's care because respondent would be unable to care for the children if they were returned home due to her continued substance abuse and inadequate parenting skills. The children were happy, healthy, and thriving in their grandmother's care and had a strong bond with her, and all of the children's needs were being met in her home. The referee also expressly considered the children's relative placement, but it noted that the children's grandmother had explicitly stated that she was interested only in adopting the children because continued contact with respondent through a guardianship presented too much of a risk to the children's safety as well as her own. The referee therefore concluded that the children's relative placement did not outweigh the factors in favor of termination of parental rights. The trial court did not clearly err by doing so. *Olive/Metts*, 297 Mich App at 40. The mere fact that children are placed with a relative does not prevent a trial court from ordering termination if it is in the children's best interests. *Id*. at 43.

In sum, given respondent's issues with substance abuse, mental health, and lack of parenting skills, EJE's specific medical needs, CLW's specific mental-health needs, and the

children's young ages and need for permanency and stability, the trial court did not clearly err by finding that it was in the children's best interests to terminate respondent's parental rights. *Id*. at 40.

Affirmed.

/s/ Michael J. Kelly
/s/ Mark T. Boonstra
/s/ Thomas C. Cameron